## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOSEPH W. LATTISAW,  )<br><br>Plaintiff,  )<br><br>v.  )<br><br>DISTRICT OF COLUMBIA, *et al.*,  )<br><br>Defendants.  ) | Civil Action No. 13-cv-0762 (KBJ) |

## <u>MEMORANDUM OPINION</u>

Pro se Plaintiff Joseph W. Lattisaw was employed for 16 years as a police officer with the District of Columbia Metropolitan Police Department ("MPD") until his retirement on mental health grounds in September of 2006. Lattisaw, an African American man, has filed this action against the MPD, the District of Columbia, the D.C. Police and Fire Clinic, and the D.C. Police and Fireman's Retirement and Relief Board (collectively, "Defendants"), claiming that Defendants retaliated against him in various ways—up to and including forcing him to retire—because Lattisaw filed a sexual harassment complaint against a superior officer in 2002. Specifically, Lattisaw's amended complaint contains eight counts that allege retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII") (Counts I–IV); retaliation with respect to making and enforcing contracts in violation of 42 U.S.C. § 1981 ("Section 1981") (Count I); deprivation of civil rights in violation of 42 U.S.C. § 1983 ("Section 1983") (Count II); conspiracy to interfere with civil rights and the failure to prevent such conspiracy in violation of 42 U.S.C. §§ 1985 and 1986 ("Section

1985" and "Section 1986") (Counts III and IV); retaliation in violation of the District of Columbia Human Rights Act, D.C. Code § 2-1401.01 et seq. ("DCHRA") (Count V); and defamation, negligent infliction of emotional distress, and intentional infliction of emotional distress in violation of D.C. common law (Counts VI, VII, and VIII, respectively). (*See* Am. Compl., ECF No. 3, ¶¶ 241–69.)

Before this Court at present is Defendants' motion to dismiss Lattisaw's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (*See* Defs.' Mot. to Dismiss ("Defs.' Mot."), ECF No. 6, at 1.)[1] Defendants contend, *inter alia*, that the District of Columbia is the only proper defendant in this action, that Lattisaw's federal and state law claims are untimely, and that his state law claims are further barred under principles of res judicata. (*See* Defs.' Mem. in Supp. of Defs.' Mot. ("Defs.' Br."), ECF No. 6-1, at 1– 2.) As explained fully below, this Court finds that Lattisaw's Title VII, Section 1981, and Section 1983 claims are conclusively time-barred, and that Lattisaw has failed to meet the relevant legal standards for stating a claim under either Section 1985 or Section 1986. Lattisaw's federal claims are thus subject to dismissal, and in the absence of any claim over which it has original jurisdiction, this Court declines to exercise supplemental jurisdiction over the remaining state law claims. Consequently, this Court will **GRANT** Defendants' motion, and Lattisaw's amended complaint will be **DISMISSED** in its entirety. A separate order consistent with this memorandum opinion will follow.

---

[1] Page numbers throughout this memorandum opinion refer to those that the Court's electronic filing system assigns.

## I.    BACKGROUND

The following facts are gleaned from Lattisaw's amended complaint and from two memoranda he filed in opposition to Defendants' motion to dismiss.  (*See* Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n"), ECF No. 8; Pl.'s Reply to Def.'s Reply to Pl.'s Opp'n, ECF No. 10.)  *See also Fennell v. AARP*, 770 F. Supp. 2d 118, 121 (D.D.C. 2011) ("[W]here the non-movant is proceeding *pro se* and has filed multiple submissions in opposition to the motion to dismiss, the district court should endeavor to read the party's filings together and as a whole." (citing *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999))).  Lattisaw's amended complaint— which totals 63 pages and contains nearly 300 paragraphs—provides numerous examples of conduct related to Lattisaw's employment that he deems discriminatory and retaliatory.  However, three events lie at the heart of Lattisaw's myriad allegations: an alleged incident of sexual harassment on September 15, 2002; the purported alteration and posting of a confidential injury report on or about October 11, 2002; and Lattisaw's allegedly involuntary retirement on September 6, 2006.

### A.    The Alleged Factual Bases For Lattisaw's Claims

With respect to the initial harassment incident, Lattisaw alleges that a supervising officer named Lieutenant Francis Allman made a sexually explicit comment to and regarding Lattisaw on September 15, 2002, while both officers were on duty. (*See, e.g.*, Am. Compl. ¶ 227 (stating that "an official made an unwanted pass at [Lattisaw], in the bathroom, and while on duty"); *see also id.* ¶¶ 23, 26 (naming Allman).)[2]  According to the amended complaint, Lattisaw then filed an internal

---

[2] In prior litigation in the Superior Court of the District of Columbia, Lattisaw alleged that Allman stood behind him "in the men's room of the police station where he was on duty" and "said [to

complaint with the MPD against Allman.  (*See id.* ¶¶ 12, 20.)  Lattisaw also appears to have filed at least one work-related injury report—known as a "PD Form 42" report—claiming that he suffered an injury or illness as a result of Allman's comments.  (*See id.* ¶¶ 23, 25, 26, 30.)  After filing the injury report, Lattisaw alleges that he was placed on sick leave and that he began to see both a D.C. Police and Fire Clinic ("PFC") therapist and a PFC psychiatrist for treatment and medication.  (*See id.* ¶¶ 19–20.)

Lattisaw claims that he returned to full duty a few weeks later, with the PFC's approval.  (*See id.* ¶¶ 19–20.)  However, upon his return to full duty, Lattisaw alleges that Sergeant J.D. Harp and others subjected Lattisaw to "retaliatory incidents [that] were directed towards him, for the internal complaint he had brought against" Allman.  (*Id.* ¶ 20.)[3]  Lattisaw states that events such as these, "along with the first incident . . . began to interfere with [his] performance[,]" and so, on October 8, 2002, Lattisaw "prepared a second PD 42 injury/illness report, . . . hand delivered it to Sgt. Harp[,] . . . [and] then [reported] to the PFC where he was [again] placed on sick leave."  (*Id.* ¶ 23.)

The second pivotal event that Lattisaw's amended complaint relates took place a few days later, when—while still on sick leave—Lattisaw learned that an altered copy of one of his injury reports had been posted in the station locker room, and that the narrative section describing the incident with Allman had been changed to depict Lattisaw as the aggressor and Allman as the victim.  (*See id.* ¶ 26.)  Lattisaw remained

---

Lattisaw], 'You have a fine a[**] there, Officer.'"  *Lattisaw v. District of Columbia*, 905 A.2d 790, 791 (D.C. 2006).

[3] For example, Lattisaw states that on October 8, 2002, Harp, a Caucasian man who was friends with Allman (*see* Am. Compl. ¶¶ 21, 23), "singl[ed Lattisaw] out [during inspection] for wearing a bulletproof vest on the outside of his uniform[,]" and then, even after Lattisaw had informed Harp that he had "waiver[s] for wearing the vest . . . [and] for not riding inside of a transport vehicle[,]" Harp nonetheless ordered Lattisaw to ride in a transport vehicle (*id.* ¶ 21).

on sick leave and, in November of 2002, PFC medical personnel diagnosed Lattisaw with "a neuropsychiatric illness" (*id.* ¶ 29)—which Lattisaw characterizes as "depression" and/or "PTSD" (*id.* ¶ 27)—resulting from "the workplace incident" with Allman (*id.* ¶ 29; *see also id.* ¶ 35).  Lattisaw alleges that PFC Director of Medical Services Ira Stohlman initially classified Lattisaw's injury as one that he incurred in the performance of duty, meaning that Lattisaw was eligible to claim certain benefits and compensation as a result.  (*See id.* ¶ 32.)

According to the amended complaint, Lattisaw did not return to full duty until March 20, 2004 (*see id.* ¶ 79), at which point Defendants allegedly continued to retaliate against him.  (*See, e.g.*, *id.* ¶¶ 80–85 (describing delay in promotion); *id.* ¶¶ 92–93 (describing abrupt transfer to new district and verbal altercation with new supervisor).)  In particular, Lattisaw claims that in late June of 2004, Stohlman said to him, "You are going to get everything you deserve" (*id.* ¶ 94 (emphasis omitted)), and then, on July 16, 2004, Stohlman reclassified Lattisaw's illness as a non-performance-of-duty injury (*id.* ¶ 95).  Stohlman's purported reason for the reclassification was that the incident with Allman did not qualify as "a 'critical incident'" under applicable "stress protocol" regulations, and thus could not result in a performance-of-duty injury. (*Id.* ¶ 104; *see also id.* ¶ 95.)  Lattisaw alleges that this reclassification eventually led the MPD to order the PFC to stop treating Lattisaw for depression in 2005.  (*See id.* ¶ 103.)

The amended complaint contains relatively few factual allegations with respect to Lattisaw's allegedly involuntary retirement—the third pivotal event—but certain details are clearly stated.  At some point after 2002, the PFC purportedly recommended

Lattisaw for retirement, stating that his illness "was of a permanent nature and that h[e] would never be able to return to a full duty status." (*Id.* ¶ 233; *see also id.* ¶ 185.) The D.C. Police and Fireman's Retirement and Relief Board ("PFRRB") instructed Lattisaw to appear at a retirement hearing scheduled for April 20, 2006, but "the hearing was tempor[arily] suspended" due to Lattisaw's poor health. (*Id.* ¶ 111.) The amended complaint does not specify whether or when a rescheduled hearing took place, but it does allege that the PFRRB "involuntarily retired" Lattisaw on mental health grounds on September 6, 2006. (*Id.* ¶ 114.) A subsequent appeal of the PFRRB's decision to the D.C. Court of Appeals apparently resulted in partial remand to the PFRRB on the issue of Lattisaw's retirement benefits (*see id.* ¶¶ 119–21), and on January 29, 2009, the PFRRB allegedly determined that "there was overwhelming evidence in the record to support the[] conclusion that [Lattisaw's] injury was the result of work place sexual harassment" (*id.* ¶ 126). However, Lattisaw alleges that "he never received any additional benefits" as a result of this determination. (*See* Pl.'s Opp'n at 11.)

## B.    Procedural History

### 1.    Litigation In D.C. Superior Court

On September 3, 2003, while Lattisaw was still an employee of the MPD, Lattisaw and his wife filed a civil action against the District of Columbia in D.C. Superior Court, claiming defamation, negligent infliction of emotional distress, and loss of consortium in connection with the MPD's alleged posting of the altered injury report. (*See* Am. Compl. ¶ 53.) *See also Lattisaw v. District of Columbia* ("*Lattisaw I*"), 905 A.2d 790, 792 (D.C. 2006) (describing Lattisaw's Superior Court complaint). The trial court dismissed Lattisaw's complaint for failure to exhaust available administrative remedies as required under the Comprehensive Merit Personnel Act, D.C. Code § 1-

606.01 et seq. ("CMPA"), and denied Lattisaw's motion for reconsideration.  (*See* Am. Compl. ¶¶ 58–59.)  *See also Lattisaw I*, 905 A.2d at 791, 792.  Lattisaw and his wife appealed, and the D.C. Court of Appeals affirmed the Superior Court's ruling, holding that Lattisaw was required to submit a grievance to the MPD regarding the posting of the altered injury report before he could file suit in Superior Court.  *See Lattisaw I*, 905 A.2d at 793–95.

### 2.   Relevant Administrative Charges

Lattisaw also purportedly filed, or attempted to file, administrative charges with both the Equal Employment Opportunity Commission ("EEOC") and the D.C. Office of Human Rights ("OHR") related to the events described above, first in 2003 (*see* Am. Compl. ¶¶ 42–44); then, in 2011 (*see id.* ¶ 237; Pl.'s Opp'n at 23); and then, again, in 2012 (*see* Am. Compl. ¶ 235; Pl.'s Opp'n at 24).  Lattisaw alleges that, finally, on February 18, 2013, he successfully filed a "Charge of Discrimination Form" with the EEOC (Am. Compl. ¶ 238), which included allegations "that [Lattisaw] was dismissed f[rom] the [ ]MPD in retaliation for" filing complaints "about Lt. All[m]an and others" (*id.* ¶ 239).  Lattisaw states that this charge was "dual-filed with the DC OHR and . . . assigned to EEOC for investigation."  (*Id.* ¶ 238.)

On February 27, 2013, the EEOC sent Lattisaw a document entitled "Dismissal and Notice of Rights[.]"  (*See* Am. Compl. at 64.)  The notice informed Lattisaw that the EEOC was closing its file on Lattisaw's charge dated February 18, 2013, because the "charge was not timely filed with EEOC[.]"  (*Id.*)  "[I]n other words," the notice explained, Lattisaw "waited too long after the date(s) of the alleged discrimination to file [his] charge[.]"  (*Id.*)  The notice also informed Lattisaw of his right to file a

7

lawsuit based on the charge in federal or state court within 90 days of receiving the notice.  (*See id.*)

3.    The Instant Action

Lattisaw filed the instant action pro se on May 24, 2013.  Lattisaw's amended complaint alleges eight counts total—four sounding in federal civil rights law, and four arising under state law (civil rights and tort).  Counts I through IV contain Lattisaw's federal causes of action:  Count I alleges that Defendants "den[ied  Lattisaw] advanced leave, [performance-of-duty] leave, sick leave, and worker's compensation benefits" (*id.* ¶¶ 241) in retaliation for Lattisaw "opposing unlawful and discriminatory employment practices" (*id.* ¶¶ 243) in violation of Title VII and Section 1981.  Count II alleges that those same actions violated Title VII and Section 1983.  (*See id.* ¶¶ 245, 247.)  Count III alleges that "agents of the [ ]MPD retaliated against [Lattisaw] by improperly influencing agents at the DC Office of Human Rights and the EEOC not to process his . . . complaints . . . [and] in doing so conspired to 'deprive' [him] of equal protections under the laws," in violation of Title VII and Section 1985.  (*Id.* ¶ 249.)  And Count IV alleges that Defendants "have retaliated against [Lattisaw] for filing a Title VII complaint by using their government power to intimidate witnesses [and] suborn perjury" in connection with Lattisaw's prior Superior Court litigation in violation of Title VII and Section 1986.  (*Id.* ¶ 252.)

Counts V through VIII contain Lattisaw's state law claims:  Count V alleges that Defendants retaliated against Lattisaw for opposing "unlawful and discriminatory employment practices," and encouraged others to do the same in violation of the DCHRA.  (*Id.* ¶ 255.)  Count VI alleges that Defendants are liable for defamation for the posting of Lattisaw's altered injury report.  (*See id.* ¶ 257.)  Count VII alleges that

Defendants' actions amount to negligent infliction of emotional distress. (*See id.* ¶ 263.)  And, finally, Count VIII alleges that Defendants' actions also amount to intentional infliction of emotional distress. (*See id.* ¶ 268.)  Lattisaw seeks compensatory damages in the amount of five million dollars and, in connection with Counts I through IV, punitive damages in the amount of five million dollars. (*See id.* ¶¶ 244, 248, 251, 252, 255, 261, 266, 269.)[4]

Defendants filed the pending motion to dismiss on September 24, 2013.  As an initial matter, Defendants contend that the District of Columbia is the only proper defendant in this action because the MPD, PFC, and PFRRB are subordinate governmental agencies that are not subject to suit, and because official capacity suits against former D.C. Attorney General Irvin Nathan and former D.C. Mayor Vincent Gray—who are listed in the caption of Lattisaw's amended complaint—are essentially suits against the District. (*See* Defs.' Br. at 6, 7–8.)  With respect to Lattisaw's federal causes of action (Counts I–IV), Defendants argue that all of the federal claims are time-barred either under Title VII's timely exhaustion requirements or under the applicable statutes of limitations. (*See id.* at 8–9, 10, 11–12.)  In addition, Defendants contend that Lattisaw lacks an independent cause of action under Section 1981 (*see id.* at 9–10), and that he has failed to meet the pleading standards for conspiracy to interfere with

---

[4] In his opposition to Defendants' motion to dismiss, Lattisaw also "asks this Honorable Court to reverse the [PFRRB]'s ruling[.]" (Pl.'s Opp'n at 11.)  This requested remedy is not available in the context of this case because, as Defendants point out, only the D.C. Court of Appeals is empowered to review the PFRRB's decisions. (*See* Defs.' Reply to Pl.'s Opp'n, ECF No. 9, at 1–2 (citing D.C. Code § 2-510).)  Moreover, there appears to be no factual basis for Lattisaw's reversal request, given that his own allegations suggest that the PFRRB ultimately ruled *in his favor* with respect to at least some of his claims, and that the D.C. Court of Appeals concurred. (*See* Am. Compl. ¶ 126 ("On remand January 29, 2009, . . . [the] PFRRB concluded there was overwhelming evidence in the record to support their conclusion that [Lattisaw's] injury was the result of work place sexual harassment."); *id.* ¶ 128 ("On December 23, 2010, the DC Court of Appeals concurred with the finding of the Retirement Board.").)

civil rights under Section 1985 and for failure to prevent such a conspiracy under
Section 1986 (*see id.* at 10–12).  Defendants also assert that punitive damages are not
available against municipalities such as the District of Columbia.  (*See id.* at 12–13.)
As for the amended complaint's state law claims (Counts V–VIII), Defendants argue
that the DCHRA claim (Count V) is untimely (*see id.* at 12), that the defamation claim
(Count VI) is both untimely and precluded by the prior Superior Court litigation (*see id.*
at 13–14), and that the claims for negligent and intentional infliction of emotional
distress (Counts VII and VIII, respectively) are subject to grievance procedures under
the CMPA that Lattisaw has failed to follow (*see id.* at 14–15).

Defendants' motion to dismiss is now fully briefed and ripe for this Court's
review.

## II.     APPLICABLE LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) provides that a party may move to
dismiss a complaint against it on the grounds that it "fail[s] to state a claim upon which
relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "A Rule 12(b)(6) motion tests the
legal sufficiency of a complaint[,]" *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir.
2002), and to survive such a motion, a complaint must comply with Rule 8(a), which
requires "a short and plain statement of the claim showing that the pleader is entitled to
relief[,]" Fed. R. Civ. P. 8(a)(2).  The purpose of this requirement is to "'give the
defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'"
*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (first alteration in original)
(quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

"Although 'detailed factual allegations' are not necessary to withstand a Rule
12(b)(6) motion to dismiss, a plaintiff must furnish 'more than labels and conclusions'

or 'a formulaic recitation of the elements of a cause of action.'" *Busby v. Capital One, N.A.*, 932 F. Supp. 2d 114, 133 (D.D.C. 2013) (quoting *Twombly*, 550 U.S. at 555).  In other words, the plaintiff must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[M]ere conclusory statements" of misconduct are not enough to make out a cause of action against a defendant. *Id.*  Rather, a complaint must contain sufficient factual allegations that, if true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In considering a motion to dismiss, "[t]he court must view the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations." *Busby*, 932 F. Supp. 2d at 134.  Although the Court must accept the facts in the complaint, it "need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint[,]" *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994), nor is the court "bound to accept as true a legal conclusion couched as a factual allegation[,]" *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

When applying these legal standards in the instant case, this Court must be mindful of the fact that Lattisaw is proceeding in this matter pro se.  The pleadings of pro se parties are to be "liberally construed," and a pro se complaint "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (internal quotation marks and citations omitted).

"This benefit is not, however, a license to ignore the Federal Rules of Civil

Procedure[,]" *Sturdza v. United Arab Emirates*, 658 F. Supp. 2d 135, 137 (D.D.C.

2009), meaning that even a pro se plaintiff must meet his burden of stating a claim for

relief, *see Budik v. Dartmouth-Hitchcock Med. Ctr.*, 937 F. Supp. 2d 5, 11 (D.D.C.

2013); *see also Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir.

2009) ("[E]ven a *pro se* complainant must plead 'factual matter' that permits the court

to infer 'more than the mere possibility of misconduct.'" (quoting *Iqbal*, 556 U.S. at

678, 679)).

## III.   ANALYSIS

Taken together, Lattisaw's submissions sketch out an assortment of unfortunate

events that took place over a four-year period that generally concluded in 2006.  (*See*

Am. Compl. ¶¶ 16–240.)  In essence, Lattisaw maintains that Defendants "violat[ed] his

civil rights, as an African-American officer because he initiated an initial complaint"

regarding an alleged instance of sexual harassment by a superior officer (Am. Compl.

¶ 12), and that "Defendants retaliated against [him] for asserting his civil rights" in a

variety of ways, including "by terminating his reasonable accommodation, and taking

[the] adverse action of involuntary retirement . . . from his position within the [police]

department" (*id.* ¶ 13).  In their motion to dismiss the amended complaint, Defendants

make a number of arguments regarding threshold issues, including questioning the

propriety of certain listed defendants (*see* Defs.' Br. at 6–8) and challenging the

timeliness of all of Lattisaw's federal and state claims (*see id.* at 8–12), and further

argue that Lattisaw has failed to allege facts relating to the essential elements of many

of his claims (*see, e.g., id.* at 10–12).  For the reasons explained below, this Court

agrees with Defendants that the District of Columbia is the only appropriate defendant;

that most, if not all, of Lattisaw's federal claims are untimely; and that Lattisaw has failed to allege adequately the necessary elements to state a claim under either Section 1985 or Section 1986. As a result, none of Lattisaw's federal claims survive the motion to dismiss, and this Court also declines to exercise supplement jurisdiction over the remaining state law claims.

### A.    The District Of Columbia Is The Only Proper Defendant In This Action

At the outset, Defendants insist that the District of Columbia is the only defendant that has been properly named in the instant action. (*See id.* at 2, 6–8.) The amended complaint's caption lists the District of Columbia and three of its subordinate institutions—the D.C. Metropolitan Police Department, the D.C. Police and Fire Clinic, and the D.C. Police and Firemen's Retirement And Relief Board—as defendants, followed by individuals Nathan and Gray. (*See* Am. Compl. at 1–2.)[5] This Court finds, for the following reasons, that the only proper defendant under the circumstances presented here is the District of Columbia itself.

First, it is well established that "non-corporate governmental bodies cannot be sued as separate entities absent explicit statutory authorization." *Kangethe v. D.C. Dep't of Emp't Servs.*, 891 F. Supp. 2d 69, 71 (D.D.C. 2012); *see, e.g.*, D.C. Code § 38-1202.01(a) (establishing Board of Trustees of the University of the District of Columbia and providing that the Board may "[s]ue and be sued"). Lattisaw has failed to identify any statutory authorization that would permit a suit against the MPD or the PFC separate and apart from the suit against the District. *See Aleotti v. Baars*, 896 F. Supp.

---

[5] The individual names appear in the caption after the statement "SERVE," which suggests that these individuals have been designated only insofar as they are authorized to accept service on behalf of the aforementioned institutions. (*See* Am. Compl. at 1–2.)

1, 6 (D.D.C. 1995) (dismissing claims against MPD because it "is a noncorporate department or body within the District of Columbia and is not suable as a separate entity"); *Ray v. District of Columbia*, 535 A.2d 868, 869 n.2 (D.C. 1987) (affirming trial court's dismissal of claims against PFC as a subordinate government entity not subject to suit).  The only statutory provision permitting suit against the PFRRB is D.C. Code § 2-510, which provides generally for judicial review of mayoral or agency decisions by the D.C. Court of Appeals, *see, e.g.*, *Rife v. D.C. Police & Firefighters' Ret. & Relief Bd.*, 940 A.2d 964, 965 (D.C. 2007), and Lattisaw does not identify any other statutory provision that would allow him to sue the PFRRB in federal court, nor is this Court aware of any.  Consequently, the Court agrees with Defendants that Lattisaw's claims against the MPD, the PFC, and the PFRRB must be dismissed, which leaves the District itself as the sole remaining institutional defendant in this action.

Second, to the extent that Lattisaw also intended to include Nathan and Gray as individual defendants, Defendants are correct that, as a general matter, claims against D.C. officials "in their official capacities are effectively claims against the District of Columbia." *Holmes-Ramsey v. District of Columbia*, 747 F. Supp. 2d 32, 42 (D.D.C. 2010); *see also Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978))).[6]  Because Lattisaw's amended complaint does

---

[6] Defendants have interpreted the amended complaint as naming Nathan and Gray as separate, individual defendants (*see* Defs.' Br. at 7–8); however, the Court has doubts that this was Lattisaw's intention because there are no allegations whatsoever pertaining to Nathan or Gray in Lattisaw's amended complaint, opposition memorandum, or surreply memorandum, and, as noted, it appears that Lattisaw has listed these individuals in the amended complaint's caption only to designate them as recipients of service of process for the other defendants.  (*See* Am. Compl. at 1–2; *see also supra* note 5.)

not specify whether Nathan and Gray are being sued in their official or individual capacities (or both), this Court must necessarily evaluate "the nature of the liability sought to be imposed." *Dickerson v. District of Columbia*, No. 09-cv-2213, 2014 WL 4851854, at *4 (D.D.C. Sept. 30, 2014) (internal quotation marks and citation omitted). And given that none of the factual allegations in the amended complaint mention Nathan or Gray specifically, much less claim that either played any personal role in any of the events at issue, the nature of the individual liability here is clearly an "official capacity" action, assuming that Lattisaw intended to sue these individuals at all. *See Holmes-Ramsey*, 747 F. Supp. 2d at 42 ("[T]he Complaint's omission of any factual allegations regarding the Officials indicates that the Officials were named as defendants simply as another means of asserting claims against the District of Columbia."). Accordingly, and also in light of the fact that the District itself is a Defendant, any claims that Lattisaw has brought against Nathan and Gray must be dismissed. *See Price v. District of Columbia*, 545 F. Supp. 2d 89, 94 (D.D.C. 2008) (collecting cases and explaining that "the overwhelming approach" of courts in this jurisdiction is to "summarily dismiss[]" claims against "government officials [who are] sued in their official capacities in conjunction with suits also filed against the municipality").

## B.   Lattisaw's Claims Under Title VII, Section 1981, and Section 1983 Are Time-Barred

With respect to Defendants' myriad statutes of limitations arguments, this Court begins with the recognition that, as a general matter, statutes of limitations create time limits for filing civil cases based on the date when a plaintiff's claims accrue, *see CTS Corp. v. Waldburger*, 134 S. Ct. 2175, 2182 (2014), and thus, because time limits protect defendants against the unforeseen "revival of claims that have been allowed to

15

slumber until evidence has been lost, memories have faded, and witnesses have disappeared[,]" such statutes "are designed to promote justice[,]" *Order of R.R. Telegraphers v. Ry. Express Agency*, 321 U.S. 342, 348–49 (1944). However, "statute of limitations issues often depend on contested questions of fact," *Firestone v. Firestone,* 76 F.3d 1205, 1209 (D.C. Cir. 1996) (citing *Richards v. Mileski,* 662 F.2d 65, 73 (D.C. Cir. 1981)); therefore, the D.C. Circuit has cautioned that "courts should hesitate to dismiss a complaint on statute of limitations grounds[,]" and that "dismissal is appropriate only if the complaint on its face is conclusively time-barred[,]" *id*. Put another way, a defendant is entitled to succeed on a Rule 12(b)(6) motion to dismiss brought on statutes of limitations grounds only if the facts that give rise to this affirmative defense are clear on the face of the plaintiff's complaint. *See Smith-Haynie v. District of Columbia,* 155 F.3d 575, 578 (D.C. Cir. 1998).

With this caution in mind and for the reasons that follow, this Court finds that Lattisaw's Title VII, Section 1981, and Section 1983 claims are, indeed, "conclusively"—*i.e.*, definitively and irrefutably—time-barred, given the facts that are alleged in Lattisaw's amended complaint.

1. <u>None Of The Allegedly Discriminatory Employment Practices Underlying Lattisaw's Title VII Claims Took Place Within The Applicable 300-Day Window</u>

The amended complaint lists "Title VII, 42 U.S.C. § 2000e-2(a)" as one of the two statutory bases for each of the four counts claiming federal civil rights violations. (*See* Am. Compl. at 56, 57, 58.) Broadly speaking, Title VII prohibits employment discrimination on the basis of an "individual's race, color, religion, sex, or national origin[,]" 42 U.S.C. § 2000e-2(a), and it also "protects employees who file discrimination charges (or engage in other statutorily protected activity) from

materially adverse retaliation by their employers[,]" *Howard R.L. Cook & Tommy Shaw Found. ex rel. Black Emps. of Library of Congress, Inc. v. Billington*, 737 F.3d 767, 772 (D.C. Cir. 2013); *see also* 42 U.S.C. § 2000e-3(a).  Courts in this jurisdiction have also long recognized that Title VII contains administrative exhaustion requirements that are akin to statutes of limitation.  *See Bowden v. United Sates*, 106 F.3d 433, 437 (D.C. Cir. 1997); *Cornish v. District of Columbia*, 67 F. Supp. 3d 345, 357 (D.D.C. 2014).  In this regard, prior to filing a Title VII suit in federal court, a complainant must file a charge of discrimination with the EEOC within 180 days of the alleged unlawful employment practice, or within 300 days of such practice if the complainant "has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice[.]"  42 U.S.C. § 2000e-5(e)(1); *see also Munoz v. Bd. of Trs. of Univ. of D.C.*, 590 F. Supp. 2d 21, 25 (D.D.C. 2008).  Charges alleging "discrete discriminatory or retaliatory acts 'must be filed within the 180- or 300-day time period after the discrete discriminatory act occurred' and 'are not actionable if time barred, even when they are related to acts alleged in timely filed charges.'"  *Munoz*, 590 F. Supp. 2d at 25 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)).  Charges alleging a hostile work environment are treated somewhat differently, however, because "[a] hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'"  *Morgan*, 536 U.S. at 117.  Thus, a hostile work environment claim is considered timely filed so long as "an[y] act contributing to the claim occurs within the [180- or 300-day] filing period[.]"  *Id.*

In the instant case, Lattisaw alleges that Defendants "retaliat[ed] against [him] for opposing unlawful and discriminatory employment practices and/or for making a

charge of unlawful and discriminatory employment practices" (Am. Compl. ¶¶ 243, 247; *see also id.* ¶¶ 249–50, 252), during a period of time that appears to span from September or October of 2002 until September of 2006, when Lattisaw was allegedly forced into involuntary retirement (*see id.* ¶ 114).  Taking the facts alleged in the amended complaint as true, Lattisaw's EEOC charge, which was dated February 18, 2013, "was treated as dual-filed with the DC OHR" (*id.* ¶ 238), which means that the 300-day time window applies, *see* 42 U.S.C. § 2000e-5(e)(1).  Therefore, to be actionable in this Court, the employment practices upon which Lattisaw's amended complaint is based must have occurred no earlier than April 24, 2012—*i.e.*, within 300 days of his EEOC charge.  Unfortunately for Lattisaw, it is clear on the face of the amended complaint that the challenged employment actions or practices took place long before April 24, 2012, and this is so even if Lattisaw's retaliation allegations are characterized as a hostile work environment claim.  Thus, it is clear on the face of the complaint that Lattisaw has failed to satisfy Title VII's timely exhaustion requirements.[7]

---

[7] Lattisaw does appear to base one retaliation contention on certain alleged conduct that theoretically could have occurred after April 24, 2012; namely, he alleges that "agents of the [ ]MPD retaliated against him by improperly influencing agents at the DC Office of Human Rights and the EEOC *not to process his two separate complaints* filed with the EEOC[.]"  (Am. Compl. ¶ 249 (emphasis added).)  Lattisaw does not mention a date or dates on which this "improper[] influenc[e]" conduct occurred, nor does the amended complaint specifically reference which of the several EEOC filings that Lattisaw allegedly made were the ones that MPD officers allegedly obstructed.  (*See* Am. Compl. ¶¶ 235–40.)  To the extent that Lattisaw is referring to the EEOC complaints that he allegedly filed on December 21, 2012, and on February 18, 2013 (*see id.* ¶¶ 235–38), Lattisaw would have had to exhaust this retaliation allegation by raising it with the EEOC within 300 days of the conduct giving rise to such a claim, and the lack of any factual details whatsoever regarding the alleged improper influence conduct and Lattisaw's response to it means that there is simply no factual basis upon which this Court can conclude that Lattisaw exhausted this particular claim at all, much less that the conduct giving rise to such claim took place within the 300-day window prior to any such EEOC charge.

Lattisaw's timeliness arguments are unpersuasive, no matter how liberally construed.  For example, Lattisaw appears to invoke the continuing violations doctrine in response to Defendants' statute of limitations contentions.  (*See* Pl.'s Opp'n at 30.)[8] The continuing violations doctrine may be "muddled, intricate and somewhat confusing," *Earle v. District of Columbia*, 707 F.3d 299, 306 (D.C. Cir. 2012) (internal quotation marks and citation omitted), but this much is clear—the applications of that doctrine that courts in this jurisdiction have recognized simply do not apply here. Indeed, under established precedent, a "continuing violation" exists for limitations purposes when the challenged conduct's "character as a violation did not become clear *until it was repeated during the limitations period*, typically because it is only its cumulative impact (as in the case of a hostile work environment) that reveals its illegality." *Id.* (emphasis added) (internal quotation marks and citation omitted).  Thus, although Lattisaw argues that application of the "continuing violations" doctrine is "warranted" here (Pl.'s Opp'n at 30 (emphasis omitted)), the factual bases for Lattisaw's discrimination claims as stated in the amended complaint took place *entirely outside* of the 300-day charge window, thereby rendering the doctrine inapposite.  *See Earle*, 707 F.3d at 306 (explaining that the continuing violation doctrine's effect is to allow a plaintiff to "rely on conduct that took place outside the limitations period so

---

[8] Specifically, Plaintiff argues in his opposition to Defendants' motion to dismiss that:

> [*C*]*ontinuing* violations are warranted from the hostile environment he experienced with all Defendants, as those violations did not become clear to the Plaintiff, until all the pieces started to fit together, almost five years later, until the conclusion [of the] second DCPRRB ruling on non-POD annuity and overwhelming evidence of sexual harassment, combined with previous appeals, complaints, grievances and POD reversals of its cumulative, negative impact emotional, physical and financial impact on the Plaintiff.

(Pl.'s Opp'n at 30 (emphasis in original).)

long as *some* conduct on which the claim is based took place within the limitations period" (emphasis added)).  Furthermore, Lattisaw has not pointed to any precedent in which Title VII has been deemed to be a statute wherein "the text of the pertinent law imposes a continuing obligation to act or refrain from acting" such that the continuing violations doctrine would necessarily be recognized.  *See id.* at 307.  Consequently, the continuing violations doctrine is of no help to Lattisaw, and this Court finds that Lattisaw's Title VII claims are conclusively time-barred on the facts as alleged in Lattisaw's amended complaint.

      2.    <u>Lattisaw's Section 1981 Claim Accrued More Than Four Years Before He Filed The Instant Action</u>

Lattisaw has also attempted to assert a claim under 42 U.S.C. § 1981, a statute that prohibits racial discrimination with respect to the right of "[a]ll persons within the jurisdiction of the United States . . . to make and enforce contracts," including contracts for employment.  42 U.S.C. § 1981(a); *see also Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 474–75 (2006).  Notably, the Civil Rights Act of 1991 amended Section 1981 by defining the phrase "make and enforce contracts" to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b); *see also Domino's Pizza*, 546 U.S. at 477.  Thus, the category of conduct subject to liability under Section 1981 was broadened, *see Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 303 (1994), and as a result, the Supreme Court has recognized that Section 1981, like Title VII, "encompasses retaliation claims[.]"  *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 451 (2008).

To state a claim for retaliation under "Section 1981, [a] Plaintiff must allege that he engaged in a statutorily protected activity, that his employer took an adverse personnel action against him, and that a causal connection exists between the two." *Jones v. D.C. Water & Sewer Auth.*, 922 F. Supp. 2d 37, 41 (D.D.C. 2013); *see also Carter v. George Washington Univ.*, 387 F.3d 872, 878 (D.C. Cir. 2004). Lattisaw alleges that Defendants "retaliated against him for filing a Title VII complaint by denying him advanced leave, [performance-of-duty] leave, sick leave, and worker's compensation benefits[,]" (Am. Compl. ¶ 241) and Defendants contend, *inter alia*, that Lattisaw's Section 1981 claim is untimely and is therefore subject to dismissal (*see* Defs.' Br. at 9, 10). This Court finds that, even when Lattisaw's submissions are construed in the light most favorable to him, Defendants are correct that Lattisaw's Section 1981 claim is not timely.

Like many federal civil rights statutes, Section 1981 does not contain its own statute of limitations, *see Pyne v. District of Columbia*, 298 F. Supp. 2d 7, 9 (D.D.C. 2002), and the briefs here suggest some confusion as to which limitations period applies in the instant case (*compare* Defs.' Br. at 10 (suggesting that the general four-year statute of limitations found in 28 U.S.C. § 1658 applies to Lattisaw's Section 1981 claims), *with* Defs.' Reply to Pl.'s Opp'n ("Defs.' Reply"), ECF No. 9, at 4 (noting that "there is case law supporting the proposition that the statute of limitations for such claims is . . . three[ ]years")). Courts in this jurisdiction generally agree that the four-year statute of limitations in 28 U.S.C. § 1658 applies only to "claims that are 'made possible' by a post-1990 [congressional] enactment, including the Civil Rights Act of 1991," *Hamilton v. District of Columbia*, 852 F. Supp. 2d 139, 144 (D.D.C. 2012); and

consequently, the key to determining which statutory period applies in any given case is

whether the claims at issue arise under the pre- or post-amendment portion of Section

1981. *See Uzoukwu v. Metro. Council of Gov'ts*, 27 F. Supp. 3d 62, 65–66 (D.D.C.

2014); *see also Graves v. District of Columbia*, 777 F. Supp. 2d. 109, 115 (D.D.C.

2011) (explaining that "[s]ome Section 1981 claims will be subject to a three-year

limitations period[ and] others, a four-year limitations period"). If the claim relates to

racial discrimination in "contract formation[,]" *Uzoukwu*, 27 F. Supp. 3d at 66

(emphasis omitted), then the claim is said to arise under the pre-amendment portion of

Section 1981, and "courts should apply 'the most appropriate or analogous state statute

of limitations[,]'" *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 371 (2004)

(quoting *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660 (1987)), which in the District

of Columbia is three years, *see Carney v. Am. Univ.*, 151 F.3d 1090, 1096 (D.C. Cir.

1998). If, however, the claim relates to "post-contract formation conduct[,]" then it

arises under the post-amendment portion of Section 1981 and is "governed by the

federal four-year limitations period" found in 28 U.S.C. § 1658. *Uzoukwu*, 27 F. Supp.

3d at 66 (emphasis omitted). There is no question that Lattisaw challenges only post-

contract formation conduct here (*see* Am. Compl. ¶ 241 (alleging that Defendants

"retaliated against him . . . by denying him advanced leave, [performance-of-duty]

leave, sick leave, and worker's compensation benefits")); therefore, Lattisaw's Section

1981 claim is subject to a four-year limitations period running from the date on which

those claims accrued.

Be that as it may, it is also quite clear on the face of the amended complaint that

application of the longer limitations period is not enough to save Lattisaw's Section

1981 claim.  Lattisaw's amended complaint states that the PFRRB involuntarily retired

him on September 6, 2006, thereby terminating his employment along with its

associated terms, conditions, and benefits.  (*See* Am. Compl. ¶ 114.)  However,

Lattisaw did not file the instant action until May 24, 2013—more than 6 years after his

allegedly involuntary retirement.  To address this timing problem, Lattisaw maintains

that none of his retaliation claims accrued (*i.e.*, the statute of limitations period did not

begin to run) until 2009, when he supposedly learned that Sergeant Harp had never

certified one of Lattisaw's injury reports for PFC review.  (*See* Pl.'s Opp'n at 13; *see*

*also* Am. Compl. ¶ 190.)  In so arguing, Lattisaw appears to invoke the so-called

"discovery rule," under which "accrual is delayed until the plaintiff has discovered his

cause of action[,]" *Gabelli v. SEC*, 133 S. Ct. 1216, 1221 (2013) (internal quotation

marks and citation omitted), but this reliance is unavailing for at least two reasons.

First of all, it is not at all clear that the discovery rule even applies in this

circumstance because the discovery rule exception is usually reserved for tort cases that

involve injuries that are difficult to discover.  *See In re Navy Chaplaincy*, 69 F. Supp.

3d 249, 257 (D.D.C. 2014).  Second, "[e]ven assuming . . . that the 'discovery rule'

applied to this case, it is discovery 'of the *injury*, not . . . the other elements of a claim

[that] starts the clock.'"  *Id.* (emphasis and alterations in original) (quoting *Rotella v.*

*Wood*, 528 U.S. 549, 555–56 (2000)); *see also Kifafi v. Hilton Hotels Ret. Plan*, 701

F.3d 718, 729 (D.C. Cir. 2012) ("[T]he discovery rule . . . provides that the statute of

limitations begins when the plaintiff discovers, or with due diligence should have

discovered, the injury supporting the legal claim." (internal quotation marks and

citation omitted)).  There is nothing in Lattisaw's submissions to suggest that he was

unaware of the injuries underlying his Section 1981 retaliation claim prior to 2009; in fact, he was most certainly contemporaneously aware of the most obvious allegedly retaliatory act (the involuntary termination of his employment), which occurred in 2006.  Lattisaw's contention that Defendants' alleged "violations did not become clear to [him], until all the pieces started to fit together, almost five years later[,]" and he came to understand the resulting "cumulative, negative . . . emotional, physical and financial impact" of the Defendants' conduct (Pl.'s Opp'n at 30), is not a credible description of Lattisaw's first indication of harm, and in any event, as explained, it is awareness of the harm itself—and not a plaintiff's full appreciation of the impact of the injury—that matters for purposes of the discovery rule.  Based on the allegations in the amended complaint, it is clear beyond cavil that Lattisaw was aware of the allegedly harmful conduct of which he now complains from the point at which MPD agents allegedly began reacting to his filing of a complaint against his superior officer, and he certainly was aware of his injury as of September of 2006, when he allegedly was forced to retire.  Consequently, Lattisaw cannot rely on the discovery rule with respect to his Section 1981 claim, and this Court finds that the four-year statute of limitations with respect to that claim began to run no later than September 6, 2006, rendering his filing of the instant claim in May of 2013 untimely.

The doctrine of equitable tolling, which Lattisaw also invokes with respect to his Section 1981 claim (*see, e.g.*, Pl.'s Opp'n at 14), is similarly unhelpful to him. "Equitable tolling permits a plaintiff to avoid the bar of the limitations period if despite all due diligence [he or] she is unable to obtain vital information bearing on the existence of [his or] her claim."  *Smith-Haynie*, 155 F.3d at 579 (citing *Cada v. Baxter*

*Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990)).  A plaintiff bears the burden of showing that such tolling is warranted, and it is well established that courts should apply equitable tolling "only in extraordinary and carefully circumscribed instances." *Mondy v. Sec'y of the Army*, 845 F.2d 1051, 1057 (D.C. Cir. 1988); *see also Morgan*, 536 U.S. at 113 ("[E]quitable doctrines such as tolling . . . are to be applied sparingly.").  No such circumstances exist here.  Although Lattisaw asserts "that he has diligently pursued his legal rights" (Pl.'s Opp'n at 14), nowhere in any of his submissions has he identified any "vital information" pertaining to "the existence of" his Section 1981 claim that he tried, but failed, to obtain during the limitations period. Moreover, although Lattisaw points to various "General Orders" and other documents that the MPD allegedly withheld (*id.* at 47; *see also* Am. Compl. ¶¶ 130–34), he has not alleged any *facts* that connect those documents to his claim for retaliation under Section 1981.

Nor can Lattisaw sustain his contention that application of the statute of limitations should be suspended with respect to his Section 1981 claim based on "the continuous treatment, or representation doctrine."  (Pl.'s Opp'n at 13.)  The tolling principles of "continuous treatment" and/or "continuous representation" ordinarily apply only to medical and legal malpractice claims, respectively.  *See Page v. United States*, 729 F.2d 818, 823 n.36 (D.C. Cir. 1984) ("[W]hen there has been a course of continuous medical treatment, a cause of action for malpractice accrues at the end of the continuous treatment if the treatment has been for the same illness or injury out of which the claim for malpractice arose." (internal quotation marks and citation omitted)); *Bradley v. Nat'l Ass'n of Sec. Dealers Dispute Resolution, Inc.*, 433 F.3d

846, 850 (D.C. Cir. 2005) ("Under th[e continuous representation] rule, when the injury to the client may have occurred during the period the attorney was retained, the malpractice cause of action does not accrue until the attorney's representation concerning the particular matter in issue is terminated." (internal quotation marks and citation omitted)).  Lattisaw has not explained why these doctrines are applicable in the instant case, and this Court sees no reason to apply them.

In the end, then, this Court is quite confident that Lattisaw's Section 1981 claim is conclusively time-barred and must be dismissed.[9]

### 3.    Lattisaw's Section 1983 Claim Accrued More Than Three Years Before He Filed The Instant Action

In Count II of the amended complaint—which Lattisaw has labeled as a claim under Title VII and Section 1983—Lattisaw repeats the same factual allegations he has made with respect to the Title VII and Section 1981 claims in Count I.  (*Compare* Am. Compl. ¶¶ 241–43, *with id.* ¶¶ 245–47.)  The gravamen of Lattisaw's allegations is that "Chief Ramsey, Assistant Chief Cockett, and Michael Eldridge retaliated against him

---

[9] Having held that Lattisaw's Section 1981 claim will be dismissed as untimely, this Court need not— and does not—reach Defendants' alternative argument with respect to the Section 1981 claim: that only private and not state actors are subject to direct suit under this statute.  (*See* Defs.' Br. at 9.) Defendants point to *Jett v. Dallas Independent School District*, 491 U.S. 701 (1989), in which the Supreme Court concluded that Section 1981 does not confer a private right of action against state actors, and argue that the cause of action found in Section 1983 is the only claim that can be made against state actors who engage in conduct that violates Section 1981.  (*See* Defs.' Br. at 9; *see also* Defs.' Reply at 3 n.1.)  But, the D.C. Circuit recently permitted a plaintiff to use the right of action found in Section 1983 to bring claims concerning the rights at issue in Section 1981, which suggests that plaintiffs may borrow the procedural remedy in Section 1983 to advance substantive Section 1981 claims against state actors.  *See Brown v. Sessoms*, 774 F.3d 1016, 1021–22 (D.C. Cir. 2014) (quoting *Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014)) (holding that plaintiff was "not obligated to 'invoke section 1983 expressly in order to state a claim'" under Section 1981 where defendants were "plainly state actors" and plaintiff had otherwise "stated the facts allegedly giving rise to liability" under Section 1981); *see also Olatunji v. District of Columbia*, 958 F. Supp. 2d 27, 33 (D.D.C. 2013) ("To prevail on a claim under § 1981 against the District . . . a plaintiff must show that the violation of his right to make contracts protected by § 1981 was caused by a custom or policy within the meaning of *Monell* and subsequent cases." (internal quotation marks and citation omitted)).  This suggests that Defendants' view of *Jett* as foreclosing Lattisaw's Section 1981 claim as a matter of law may not be the law in this circuit.

for filing a [discrimination] complaint by denying him advanced leave, [performance of duty] leave, sick leave, and worker's compensation benefits authorized by law." (*Id.* ¶ 245.)  As best this Court can tell, Lattisaw seeks to impose municipal liability on the District for Eldridge's "determin[ation] that [Lattisaw]'s condition permanently prevented him from police work" (*id.* ¶ 226), and for Cockett's actions "refus[ing] to process leave requests submitted by Lattisaw, den[ying] hi[m] leave authorized by law, and plac[ing] him in a [leave-without-pay] status" (*id.* ¶ 6).  (*See also* Pl.'s Opp'n at 21 ("[Lattisaw] asserts that the District is liable for the policy decisions of MPD Official Cockett . . . and the policy decisions of Captain Michael Eldridge[.]").)  Thus, reading Lattisaw's submissions together, this Court construes Count II as a claim for municipal liability under Section 1983 with respect to the named MPD officers' alleged violations of Lattisaw's federal civil rights.  *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694–95 (1978).  Defendants argue that even if Lattisaw has managed to state a claim under Section 1983, this claim is manifestly untimely as alleged here.  (Defs.' Br. at 8–9.)  This Court agrees.

Section 1983 provides a cause of action against state actors for deprivation of individual rights that arise under the constitution or federal statutes.  *See* 42 U.S.C. § 1983; *see also City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 119 (2005).  In order to state a claim for municipal liability under Section 1983, a plaintiff must allege "a predicate . . . violation" of a federal right that "a custom or policy of the municipality caused[.]"  *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003); *see also Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 106 (1989) (explaining that "[a] determination that § 1983 is available to remedy a statutory

or constitutional violation involves a two-step inquiry").[10]  In the District of Columbia, federal courts apply the District's "three-year residual statute of limitations to a section 1983 claim[,]" *Earle*, 707 F.3d at 305, and such claims are said to accrue "when a plaintiff has 'a complete and present cause of action' and can 'file suit and obtain relief[,]'" *Hill v. Gray*, 28 F. Supp. 3d 47, 57 (D.D.C. 2014) (quoting *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997)).

With respect to these standards, the D.C. Circuit has recognized that Section 1983 claims generally accrue when the challenged wrongful conduct occurs.  *See Earle*, 707 F.3d at 305 (citing *Munoz v. Bd. of Trs. of Univ. of D.C.*, 427 F. App'x 1, 4 (D.C. Cir. 2011) (per curiam)).  The conduct that Lattisaw appears to challenge in the Section 1983 claim he brings here took place in the course of his employment with the MPD, which ended on September 6, 2006, and because Lattisaw did not file the instant action until more than six years later, his Section 1983 claim falls well outside the applicable three-year limitations period.  Indeed, even if this Court was to assume *arguendo* that none of Lattisaw's claims accrued until 2009—when Lattisaw discovered Harp's alleged failure to certify one of Lattisaw's injury reports (*see* Pl.'s Opp'n at 13)—Lattisaw's Section 1983 claim would *still* be untimely in light of the applicable three-year statute of limitations.

Nevertheless, Lattisaw argues that this Court should equitably toll the statute of limitations with respect to his Section 1983 claim because Defendants fraudulently

---

[10] The Court assumes without deciding that Lattisaw has stated the elements of a claim for relief under Section 1983.  *See Earle*, 707 F.3d at 304 (internal quotation marks, alteration, and citation omitted) ("In our circuit it is a venerable practice, and one frequently observed, to assume *arguendo* the answer to one question in order to resolve a given case by answering another and equally dispositive one.").

concealed pertinent evidence.  (*See, e.g.*, *id.* at 47 (asserting that Defendants "fraudulently concealed evidence" that "substantiate[s] his 1983 claim[]").)  *See also Earle*, 707 F.3d at 309 (quoting *Drake v. McNair*, 993 A.2d 607, 619 (D.C. 2010)) (explaining that, under the common law doctrine of fraudulent concealment, "'affirmative acts employed by a party to fraudulently conceal either the existence of a claim or facts forming the basis of a cause of action toll the running of limitations periods'").[11]  Specifically, Lattisaw alleges that, in April of 2012, the MPD released documents that Lattisaw maintains the Department "had sought to conceal from the public and its officers for years" (Am. Compl. ¶ 130), including "nearly all of its General Orders, Special Orders and related directives, which dictate[] how []MPD personnel [are] to exercise [their] authority" (*id.* ¶ 131).  Lattisaw does not allege any further facts with respect to the *content* of these supposedly fraudulently withheld documents, other than to state generally that the documents "substantiate his 1983 claim[]" and "bolster[] his factual support for existing claims" (Pl.'s Opp'n at 47), and his attempt to argue that the statute of limitations should be tolled on fraudulent concealment grounds plainly fails because none of Lattisaw's submissions makes any allegations regarding what, if any, specific "affirmative" steps Defendants took to conceal the documents mentioned.  Nor has Lattisaw alleged facts sufficient to support any inference that such documents relate to "either the existence of . . . or facts forming the basis of" his Section 1983 claim or any other claims.  *Earle*, 707 F.3d at 309

---

[11] In *Earle v. District of Columbia*, the D.C. Circuit recognized that "in a section 1983 action, [courts] apply the tolling rules of 'the state in which the cause of action arose[.]'"  *Earle*, 707 F.3d at 309 (quoting *Wallace v. Kato*, 549 U.S. 384, 387 (2007)).  In *Earle*, as here, the Section 1983 cause of action arose in D.C. and thus "we look to the law of the District of Columbia for the relevant common law tolling rules."  *Id.*

(internal quotation marks and citation omitted).  Instead, Lattisaw's concealment allegations appear to be based on his general belief that such documents "would have aided the courts and the District in reaching a fair an[d] impartial decision much earlier as it relates to [Lattisaw's] charge of discrimination."  (Am. Compl. ¶ 134; *see also id.* ("The accuracy of documents, submitted in the Court system initially started out as inaccurate.").)  Put another way, it appears that Lattisaw believes that the documents demonstrate that the Superior Court and the PFRRB got it wrong in his case, and he now looks to this Court to reach a different conclusion.  (*See, e.g.*, Pl.'s Opp'n at 11 ("[Lattisaw] asks this Honorable Court to reverse the [PFRRB]'s ruling[.]").)  However, even the most earnest convictions and contentions are, without more, manifestly insufficient to give rise to any inference that fraudulent concealment occurred or that any other grounds for concluding that the statute of limitations should be tolled exists. Consequently, this Court has no choice but to conclude that the Section 1983 claim Lattisaw has brought in this case is conclusively time-barred and must be dismissed.

### C.   Lattisaw Has Failed To State A Claim For Relief Under Either Section 1985 Or Section 1986

At this point in the Court's analysis, only two federal civil rights claims remain: Counts III and IV, which allege that Defendants have violated Section 1985 and Section 1986, respectively.  Section 1985 addresses "[c]onspirac[ies] to interfere with civil rights[,]" and as relevant here, provides a cause of action for damages against any "two or more persons" who "conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws[.]" 42 U.S.C. § 1985(3).  Section 1986 provides a cause of action for "neglect to prevent" a Section 1985 conspiracy.  *Id.* § 1986.  It is not clear from the face of the amended

complaint whether or not Lattisaw has brought these claims within the applicable statutes of limitations, and perhaps for this reason Defendants also contend that Lattisaw has failed to allege facts to support each of the required elements of claims brought under Section 1985 or Section 1986.  (*See* Defs.' Br. at 10–12.)  For the reasons that follow—and, in particular, because "even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct[,]'" *Atherton*, 567 F.3d at 681–82 (quoting *Iqbal*, 556 U.S. at 678, 679)—this Court agrees with Defendants that Lattisaw has failed to state a claim for which relief can be granted under Section 1985 or Section 1986.

With respect to Lattisaw's Section 1985 claim, Count III of the amended complaint alleges that Defendants "conspired to 'deprive' [Lattisaw] of equal protections under the laws" when "agents of the []MPD . . . improperly influenc[ed] agents at the DC Office of Human Rights and the EEOC not to process [Lattisaw's] two separate complaints filed with the EEOC[.]"  (Am. Compl. ¶ 249.)  To state a claim for conspiracy to interfere with civil rights under 42 U.S.C. § 1985(3), a plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, . . . and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in her person or property or deprived of any right or privilege of a citizen of the United States." *Atherton*, 567 F.3d at 688 (alteration in original) (quoting *Martin v. Malhoyt*, 830 F.2d 237, 258 (D.C. Cir. 1987)).  Furthermore, the D.C. Circuit has recognized that such a conspiracy must be "motivated by some class-based, invidiously discriminatory animus." *Id.* (internal quotation marks and citation omitted); *see also Kelley v. District*

*of Columbia*, 893 F. Supp. 2d 115, 120 (D.D.C. 2012) ("Alleging that the defendants were motivated by a class-based invidiously discriminatory animus is required in order to avoid converting Section 1985 into a general federal tort law claim." (internal quotation marks and citation omitted)).

Here, even under the most liberal interpretation of Lattisaw's submissions, Lattisaw has not alleged any facts that, if true, would show that Defendants conspired against him because of class-based, discriminatory animus.  The only factual allegations in Lattisaw's submissions that pertain to his Section 1985 claim are that: (1) "Captain Robert Tupa [and] Captain Michael Eldridge[,] . . . at the behest of Chief Ramsey and other agents of [the] []MPD[,] abused their authority and improperly influenced the investigation and grievance filed by Sgt. Lattisaw in retaliation for Sgt. Lattisaw filing a Title VII complaint" (Am. Compl. ¶ 8); (2) such "unethical lower ranked []MPD officials[] [were] aided and abetted by other unethical senior []MPD officials" (*id.* ¶ 219); and (3) various D.C. employees and officials "wrongfully, maliciously and without probable cause, conspired in carrying out their plan to wrongfully cause [Lattisaw's] forced disability retirement" (*id.* ¶ 214).  The amended complaint does not make any allegations regarding acts taken in furtherance of the alleged conspiracy, nor does it assert that the alleged conspiracy was motivated by invidious discriminatory animus.  Thus, this Court is unable to "draw the reasonable inference that the defendant[s are] liable for the misconduct alleged[,]" *Iqbal*, 556 U.S. at 678, and Lattisaw's bare and conclusory contentions are not enough to survive Defendants' motion to dismiss.  *See also id.* ("Where a complaint pleads facts that are 'merely

consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" (quoting *Twombly*, 550 U.S. at 557)).

The fact that Lattisaw's Section 1985 is the death knell for his Section 1986 claim as well, because "a colorable claim under § 1985 is a prerequisite to stating an adequate claim for neglect to prevent under § 1986." *Burnett v. Sharma*, 511 F. Supp. 2d 136, 145 (D.D.C. 2007) (internal quotation marks and citation omitted); *see also Rodriguez v. Editor in Chief, Legal Times*, 285 F. App'x 756, 759 (D.C. Cir. 2008) (per curiam) (holding that "there is no basis for relief under § 1986" where a plaintiff "did not state a claim under § 1985(3)").  Furthermore, even if Lattisaw had provided sufficient allegations to satisfy the predicate terms of Section 1985, this Court finds that the amended complaint is devoid of any allegations pertaining to Defendants' supposed failure to prevent a conspiracy to violate his civil rights—allegations that are needed to support a claim brought under Section 1986.  Thus, Lattisaw's Section 1986 claim also fails in its own right, and must be dismissed.

### D.    This Court Declines To Exercise Supplemental Jurisdiction Over Lattisaw's State Law Claims

Finally, given that Lattisaw has brought four state law counts in his amended complaint (*see id.* ¶¶ 253–69), it appears that he is seeking to have this Court exercise supplemental jurisdiction over these claims under 28 U.S.C. § 1367.  That statute provides federal courts with the authority to exercise supplemental (or "pendent") jurisdiction over state law claims that "form part of the same case or controversy" as claims over which the courts have original jurisdiction.  28 U.S.C. § 1367(a).  However, and significantly for present purposes, the statute also provides that "district courts may decline to exercise supplemental jurisdiction over" such claims if "the district court has

dismissed all claims over which it has original jurisdiction[.]"  *Id.* § 1367(c)(3); *see also Shekoyan v. Sibley Int'l*, 409 F.3d 414, 423 (D.C. Cir. 2005) ("A district court may choose to retain jurisdiction over, or dismiss, pendent state law claims after federal claims are dismissed."); *id.* ("'[P]endent jurisdiction is a doctrine of discretion, not of a plaintiff's right.'" (alteration in original) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966))).  The Supreme Court has long held that "'[i]n the usual case in which all federal-law claims are dismissed before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.'"  *Shekoyan*, 409 F.3d at 424 (quoting *Carnegie-Melon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

Such is the case here.  This Court has already concluded that Lattisaw's federal claims against Defendants must be dismissed.  Moreover, this matter is at an early stage procedurally, and this Court sees no likelihood of undue inconvenience or unfairness to the parties due to the Court's decision to decline to exercise supplemental jurisdiction over Lattisaw's state law claims.  *See Jones v. D.C. Water & Sewer Auth.*, 922 F. Supp. 2d at 43.  Therefore, this Court will dismiss Lattisaw's DCHRA and common law claims (Counts V through VIII) without prejudice, leaving Lattisaw free to bring such claims in the appropriate state forum, to the extent they are not otherwise barred under state law.  *See, e.g.*, *FiberLight, LLC v. Nat'l R.R. Passenger Corp.*, No. 13-cv-1138, 2015 WL 871101, at *17 (D.D.C. Mar. 2, 2015) (declining to exercise supplemental jurisdiction over plaintiff's state law breach of contract claim).

## IV.     CONCLUSION

Lattisaw has filed a lengthy amended complaint that relates various events regarding his former employment circumstances.  Although his allegations (if true) are serious and substantial, there are threshold issues of law that prevent Lattisaw from proceeding to seek a remedy in this Court.  Specifically, for the reasons set forth above, most of Lattisaw's federal civil rights claims are time barred, and for this reason and others, he has failed to state any federal claims upon which relief can be granted.  Furthermore, this Court declines to exercise supplemental jurisdiction over the remaining state law claims in the absence of any valid federal cause of action.  Consequently, as set forth in the separate order accompanying this memorandum opinion, Defendants' motion to dismiss will be **GRANTED**, and the amended complaint will be **DISMISSED** in its entirety.


DATE:  July 28, 2015                          *Ketanji Brown Jackson*
                                              KETANJI BROWN JACKSON
                                              United States District Judge